UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-04109-JPH-MJD |
| | ) | |
| DUSHAUN ZATECKY individually and in his | ) | |
| official capacity, as Superintendent for the | ) | |
| Pendleton Correction Facility, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment
and Directing Further Proceedings**

Christopher Lewis, who is currently incarcerated at Miami Correctional Facility, challenges the constitutionality of the conditions of his confinement when he was incarcerated at Pendleton Correctional Facility ("PCF"). He alleges that the defendants refused to turn on the heating unit for his housing area and left the windows in the housing area open, subjecting Mr. Lewis to extremely cold conditions.

Mr. Lewis has moved for summary judgment, arguing that the undisputed facts show that the defendants refused to turn on the heating unit and refused to close the windows despite repeated complaints from Mr. Lewis and other inmates. The defendants, Warden Zatekcy, Assistant Warden Alsip, Maintenance Supervisor Alberson, Lieutenant Caylor, and Officer Prestel[1], have responded in opposition to the motion for summary judgment, and Mr. Lewis has filed a reply. For the reasons explained below, Mr. Lewis's motion for summary judgment is **denied**.

---

[1] This defendant is identified as "Matthew Prestl" on the docket. The defendants' response in opposition to the motion for summary judgment, however, identifies him as "Matthew Prestel." *See* dkt. 126 at 1.

# I.     Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show evidence that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).

To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Not every factual dispute between

the parties will prevent summary judgment, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matshshita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.      Statement of Facts

Applying the standards set forth above, the following statement of facts gives the defendants, as the non-moving parties, the benefit of all reasonable inferences.

The heating system at PCF is a steam heat system that generates heat using liquid gas. The steam heat is then distributed throughout PCF via a network of pipes and blowers.

Mr. Lewis claims that the steam heat system is antiquated and has been broken down for years. For example, the dampers, louvers, and modulators—all features that are intended to help moderate temperature on the steam heat system—are not properly maintained by the defendants and thus do not function. Additionally, the defendants do not maintain the exhaust fans in the ceilings of the housing units, and those fans do not work. The defendants also shut off the vents in each cell, which disables another option to stabilize the temperature in the housing units at PCF.

Maintenance Supervisor Alberson disputes Mr. Lewis's characterization of the heat system at PCF, claiming that "[a]ll efforts" were made to maintain and repair the heat system and that maintenance staff did a "good job of modulating temperature" with the controls that were in place. Dkt. 125-1 at ¶ 5.

Mr. Lewis was incarcerated in G-Cell House at PCF from at least January 10, 2017, until at least May 12, 2017. In early January 2017, it became so hot in G-Cell House that the windows were opened. Mr. Lewis asserts that Lieutenant Caylor ordered the heat to be shut off on January 10, 2017, and the windows remained open.

3

Over the next few months, the temperature in G-Cell House fell because the outdoor temperature often dropped below freezing—sometimes dropping below zero degrees. Mr. Lewis and other inmates complained of the cold to both Lieutenant Caylor and Officer Prestel multiple times a day. On many occasions, Lieutenant Caylor and Officer Prestel responded by telling the inmates to "shut up," "quit crying," or "man up." Dkt. 120-1 at 11. When Mr. Lewis requested extra blankets and clothes, his requests were denied. During this time, Mr. Lewis spent the entirety of most days not able to get out of bed, shivering, and losing feeling in his extremities. He often skipped his shower and meals because it was too cold.

Lieutenant Caylor and Officer Prestel informed the inmates the windows would not be closed because the tool to close the windows was at another location and they were not going to repeatedly open and close the windows. They also told the inmates that maintenance was responsible for turning the heat back on.

Lieutenant Caylor and Officer Prestel dispute Mr. Lewis's version of events. Both attest that they did not respond to complaints about the temperature by saying "shut up," "quit crying," or "man up." Dkt. 120-1 at 11. They claim that they did not ignore inmate complaints about the temperature. Rather, they reported such issues to supervisors or sent work orders for windows to be closed. Lieutenant Caylor further stated that he did not order the heat turned off in G-Cell House and that inmates are issued a coat, two blankets, t-shirts, two sheets, sweatpants, a long-sleeve sweatshirt, and an orange one-piece jumpsuit. Officer Prestel avers that he did not have access to the tool needed to close the windows on G-Cell House and that he did not have control over the heat in G-Cell House.

Mr. Lewis filed an informal grievance about the temperature in G-Cell House on February 9, 2017. In response, Lieutenant Caylor stated that he closed the windows he could reach on

4

February 9, 2017, and that he had closed all of the windows in G-Cell House at the beginning of winter. He claimed that the inmates were responsible for opening the windows.

Mr. Lewis filed another informal grievance in April 2017, complaining that the windows had been open, and the heat off, since January 2017. He stated that Lieutenant Caylor refused to close the windows and turn on the heat. Lieutenant Caylor again responded by saying that he had closed all of the windows in G-Cell House at the beginning of winter. With respect to January 10, 2017, he informed Mr. Lewis that there was a power outage that day that caused the heat switches to need to be reset. Although Lieutenant Caylor acknowledged that it was fifty degrees in the morning and sixty degrees in the afternoon of that day, maintenance reset the heat switches within an hour of Lieutenant Caylor notifying maintenance of the problem.

According to Mr. Lewis, Assistant Warden Alsip routinely sent emails to prison staff, including Lieutenant Caylor, Officer Prestel, and Maintenance Supervisor Alberson, advising them not to open or close the windows in the housing units and not to turn the heat on or off. Assistant Warden Alsip disputes this assertion. He asserts that he never sent such emails and that any "instructions to staff about windows and heat control" were intended to instruct prison staff to "maintain a proper and comfortable temperature" in the housing units. Additionally, Assistant Warden Alsip denies Mr. Lewis's contention that Assistant Warden Alsip told inmates it was "just that time of year." Dkt. 125-4 at ¶ 7. He attests that he works with the Major's office and maintenance to remedy any complaint about temperature.

Mr. Lewis contends that Warden Zatecky issued Facility Directive "FD-05-41" (the "Directive") outlining when "heating season" should begin and that this policy led to the refusal to turn the heat back on after January 10, 2017. Dkt. 120-1 at 6. He also asserts that Warden Zatecky

5

had a practice of not maintaining the infrastructure at PCF which led to the malfunctioning steam heat system and thus the cold conditions in G-Cell House.

The defendants designated a copy of the Directive as part of their response in opposition to Mr. Lewis's motion for summary judgment. Dkt. 125-5. The Directive outlines when facility superintendents should consider "initiating the provision of heat" and when the "heating season" should conclude.

### III.   Analysis

Mr. Lewis argues the undisputed facts establish that the defendants deprived him of adequate shelter from January to May 2017 by opening the windows of G-Cell House and turning off the heat. The defendants contend that Mr. Lewis is not entitled to summary judgment and that they are immune from his claims under the doctrine of qualified immunity.

#### A.  Individual Capacity Claims

"[P]rison officials have a duty to 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To determine if an inmate's Eighth Amendment rights are violated by a deprivation of any of these items, the Court examines the alleged violation "both objectively and subjectively." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016).

The first inquiry asks whether the alleged deprivation is, when viewed objectively, sufficiently serious. *Id.* This element is satisfied "when the plaintiff shows that he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). Here, Mr. Lewis alleges that he was subjected to brutally cold conditions from January 10, 2017, to May 12, 2017. The defendants have not designated evidence

to specifically refute Mr. Lewis's claims about the temperature of G-Cell House from January to May 2017. Thus, for purposes of summary judgment, Mr. Lewis has satisfied the first element. *See Haywood*, 842 F.3d at 1031 (finding "no question" that the plaintiff's allegations that the power was off for four days, prison staff refused to fix a broken window, and prison staff refused requests for blankets, coats, and other "means of warmth" satisfied the first, objective inquiry).

The second inquiry is subjective and asks whether the mental state of the prison official is one of "deliberate indifference to inmate health or safety." *Id.*; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). To establish this, a plaintiff must show that "'the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Estate of Miller*, 680 F.3d at 989 (quoting *Sanville*, 266 F.3d at 734). A plaintiff need not show that the prison official literally ignored his complaints. He "must show only that [the official's] responses were so plainly inappropriate as to permit the inference that [the official] intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Here, a factual issue exists as to whether each defendant knew of and disregarded the excessive risk to Mr. Lewis posed by the open windows and lack of heat. With respect to Officer Prestel and Lieutenant Caylor, Mr. Lewis alleges that he and multiple other inmates complained to Officer Prestel and Lieutenant Caylor about the temperature in G-Cell House, but they refused to close the windows, turn on the heat, or provide warm clothing or blankets. Officer Prestel and Lieutenant Caylor deny these allegations and contend that they reported any issues with the heat to supervisors so the issues could be corrected. They also assert that they closed the windows that

were accessible to them, and that neither had direct access to the tool needed to close the rest of the windows. Such a factual dispute precludes summary judgment on this issue.

A similar factual dispute precludes an entry of summary judgment with respect to the individual capacity claim against Maintenance Supervisor Alberson. Maintenance Supervisor Alberson claims that the maintenance staff made every effort to maintain the heat system at PCF and that the tools for moderating temperature worked well. Mr. Lewis contends that Maintenance Supervisor Alberson knew the heat system was in disrepair and refused to properly maintain and fix it. This contested factual issue is material because its resolution determines whether Maintenance Supervisor Alberson violated Mr. Lewis's Eighth Amendment rights. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) ("And a factual dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting *Anderson*, 477 U.S. at 248)).

Summary judgment on Mr. Lewis's individual capacity claims against Assistant Warden Alsip is similarly not warranted. Much like the claims discussed above, the parties provide different factual accounts of the events from January to May 2017. Mr. Lewis claims that Assistant Warden Alsip sent directives to prison staff to not open or close windows and to not turn the heat on or off; Assistant Warden Alsip denies these allegations and further denies the assertion that he told inmates it was "just that time of year." Dkt. 125-4 at ¶ 3. Assistant Warden Alsip claims that he instructed prison staff to "maintain a proper and comfortable temperature" in the housing units. *Id.* at ¶ 6. Mr. Lewis also asserts that Assistant Warden Alsip refused to repair the malfunctioning heat system after receiving complaint from Mr. Lewis and other inmates. Assistant Warden Alsip maintains that, upon receipt of a complaint, he "work[s] with the Major's office and/or maintenance staff to remedy the issue." Dkt. 125-4 at ¶ 8.

Finally, a material factual dispute precludes entry of summary judgment on the individual capacity claims against Warden Zatecky. Mr. Lewis contends that Warden Zatecky is individually liable for the conditions of Mr. Lewis's confinement because (1) Warden Zatecky implemented the Directive which is unconstitutional and (2) Warden Zatecky has an unconstitutional policy or practice of failing to properly maintain the infrastructure of PCF to provide adequate shelter to inmates housed there. With respect to the latter claim, there is a factual dispute as to whether the heat system at PCF is properly maintained. Dkt. 120-1 at 8-9; dkt. 125-1 at ¶ 5. Summary judgment on this claim is not warranted.

As to Warden Zatecky's liability based on the Directive, Mr. Lewis has not designated evidence showing that the Directive caused the alleged constitutional violation. Mr. Lewis has not designated evidence showing when the "heating season" began in the fall of 2016 and when it ended in the spring of 2017; the temperatures in G-Cell House when the heat system was turned on and when it was turned off; that Warden Zatecky was responsible for turning off the heat in January 2017; or that the heat was turned off as a result of the Directive. Mr. Lewis has not shown that summary judgment in his favor is warranted.

### B.  Qualified Immunity

In their response in opposition to Mr. Lewis's motion for summary judgment, the defendants contend that, even if Mr. Lewis could establish a violation of his constitutional rights, they are entitled to qualified immunity "because their actions were not clearly unconstitutional." Dkt. 126 at 10. As explained above, Mr. Lewis is not entitled to summary judgment. Therefore, the Court need not address qualified immunity. To the extent the defendants intended to seek summary judgment based on qualified immunity, that argument is barred by Local Rule 7-1(a).

S.D. Ind. Local Rule 7-1(a) ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court.").

## IV.    Conclusion

For the foregoing reasons, the motion for summary judgment filed by Mr. Lewis, dkt. [118], is **denied**.

Because it is the Court's preference that Mr. Lewis be represented by counsel for trial, the Court will attempt to recruit counsel to represent him. Mr. Lewis shall have **through August 10, 2020,** in which to object to the appointment of counsel on his behalf.

Once counsel has appeared for Mr. Lewis, the Magistrate Judge is requested to set this matter for a status conference to discuss what further development is necessary for trial and whether the case is amenable to settlement.

The **clerk is directed** to update the spelling of defendant Matthew Prestel's name on the docket.

**SO ORDERED.**

Date: 7/13/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

10

Distribution:

CHRISTOPHER G. LEWIS
994548
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

Magistrate Judge